## STANDISH v. DOW *et al.*

| 21 | 363 |
| 82 | 413 |
| 82 | 514 |
| 21 | 363 |
| 95 | 709 |

1. **Deed of trust:** DECREE: FORECLOSURE: CONSTRUCTION. The petition in the foreclosure of a junior mortgage referred to a senior deed of trust as a prior lien, made the *cestui que trust* a party, but expressly waived any personal claim against him: the prayer was general to bar the equity of redemption and for general relief: the mortgage in suit recited upon its face that it was subject to the deed of trust: the decree was taken *pro confesso*, and declared the equity of such *cestui que trust* barred from the time of sale: the sale under the deed was prior to the sale under the decree. *Held,*

   1. That the decree must be understood and construed in connection with the facts stated in the petition and the prayer based thereon; and should not be regarded as postponing the right of the senior lien holder.

   2. That the sale under the deed of trust before the sale under the decree, foreclosed and barred all the equities in the premises sold under the mortgage and decree from the date of such sale.

2. **Pleading:** TRIAL AFTER RULING ON DEMURRER. The overruling of a demurrer to the answer does not conclude the plaintiff from contradicting the allegations of the answer by evidence upon a trial of the issues of fact.

3. **Title:** ACTION TO QUIET. It is competent for the owner in possession of real estate to ask a court of equity to quiet his title by removing a cloud cast thereon.

*Appeal from Scott District Court.*

FRIDAY, DECEMBER 7.

IN April, 1856, Price owned the land in controversy and conveyed it to Smith, the purchaser executing a trust deed to Dillon to secure a part of the purchase-money, which was to become due in April, 1857 and 1858. In November, 1859, the trustee advertised the property and sold it to Cook, who, in five days afterward, conveyed to Le Claire, and he, in April, 1860, conveyed to plaintiff. This is plaintiff's title. It is proper to state that Cook conveyed without warranty, and that Le Claire warranted

against all incumbrances, except mortgages of record prior to December 10, 1859, the date of the deed from Dillon, as trustee, to Cook.

Defendant (Dow) derives title as follows: October 11, 1856, Smith conveyed to Edward L. Twitchell. February 4, 1857, Edward L. Twitchell made a mortgage to Seth Twitchell, and, on the next day, another mortgage to Brown and Paulsen, to secure about $380, due in thirty days. This last mortgage recites that it was subject to two prior incumbrances, referring to the trust deed and mortgage to Seth Twitchell. January 13, 1858, Brown, the holder of this last mortgage, commenced his proceeding to foreclose the same, making the mortgagor, Price, and Seth Twitchell parties. As Seth Twitchell does not figure in this controversy, he need not be further mentioned. The petition sets forth the mortgage to Brown and Paulsen, *and that it was given subject to the prior incumbrances, as above mentioned.* The petitioner states that he is informed that Price has or claims to have some interest in or claim upon the mortgaged premises; asks that he be made defendant, ordered to answer the petition, but no "personal claim is made against him." The prayer is for the usual judgment, that said defendants, and all persons claiming under them, *subsequent to the commencement of said action*, either as purchasers, incumbrancers or otherwise, may be barred and foreclosed of all equity of redemption, and for general relief. Price, though served, did not appear, and there was a decree *pro confesso.* This decree finds the amount due against the mortgagor, orders a sale of the premises and a special execution at any time after December 15, 1858. It is further ordered, as to so much of the land as should be sold, that said defendants shall, "*from the time of said sale,* be barred and foreclosed from redeeming the same, or from setting up any claim thereto in law or equity." In

May, 1862, the sheriff sold the property, under this decree, to Dow, and executed to him a deed in due form. Upon these facts, the court below decreed in plaintiff's favor, quieting his title as against any claim of the defendant (Dow) under the mortgage foreclosure proceedings, and from this order Dow appeals.

*Grant & Smith* and *Brown & Sully* for the appellant.

*Geo. P. Whitcomb* for the appellee.

WRIGHT, J.—The priority of the lien under which plaintiff claims is not controverted. Nor is there any claim that the trust-deed was fraudulent; that it had been paid or discharged; nor that for any reason it was invalid. Price was a prior incumbrancer, his debt not being due at the time Brown commenced his foreclosure proceeding. Brown's mortgage was taken subject to the Price lien, and in his petition he expressly waives any personal claim against such prior incumbrancer. The decree of foreclosure was taken *pro confesso*. The petition upon which it was predicated did not assert or claim any priority, nor ask that the lien of the trust-deed should be postponed. The prayer was to bar the equity of redemption, and for general relief. This equity, or any claim of defendants in law or equity, was declared barred *from the time of the sale*. Before the sale under the special execution, there was a sale under the trust-deed. Thus we have at a glance the positions of the respective parties. Our opinion is, that Price was a proper, but not a necessary, party. If there had been any pretense that this prior lien had been paid, that it was fraudulent or invalid for any cause, of course the propriety of making the holder thereof a party would be even more manifest. But having made him a party, in view of the prayer of the petition and the facts upon which

<span style="font-variant: small-caps">1. DEED OF TRUST: decree: foreclosure: construction.</span>

it was predicated, the question is, what effect shall the
decree as rendered have upon him or plaintiff, who claims
under him ?

Though Price was a proper, though not a necessary
party (Story's Eq. P., § 193; *Heimstreet* v. *Winnie*, 10
Iowa, 430; *Veach* v. *Scharp*, 3 Id., 194), it is equally
true, upon the facts stated in the foreclosure proceeding,
that his interests could not be touched in such suit, as
they were clearly paramount to those of the mortgagee
or plaintiff therein. The petition concedes the validity
of this prior lien, or at least asserts nothing against it as
a complete and subsisting incumbrance. In addition to
this, the Brown and Paulsen mortgage, under which the
defendant (Dow) claims, recognizes the priority of the
trust-deed, and it was expressly made subject to it and
the mortgage to Seth Twitchell. The petition of Brown
did not ask to postpone this trust incumbrance, but
expressly prayed that " defendants and all persons, claim-
ing under defendants *subsequent* to the commencement
of said action, should be barred and foreclosed of all
equity of redemption." The order, therefore, in the
decree or judgment, that defendants should, as to the
lands sold, after the sale thereof, be barred and foreclosed
from redeeming the same or setting up any claim thereto,
must be understood in connection with the facts stated in
the petition, and the prayer based thereon. And especi-
ally so, as the decree was rendered *pro confesso*, and
without any appearance on the part of Price, the benefi-
ciary under the trust-deed. And when thus understood
it is but too plain that there was no claim of priority on
the part of the junior mortgagees or their assignee; and
that the point which appellant claims was ruled in that
proceeding, was not, nor pretended to be, in issue therein.
And following this is the proposition, that a judgment
or decree is only final for its proper object and purpose,

and this object or purpose is derivable, primarily, from the case made by the pleadings.

Then, again, as already suggested, the petition itself, in the foreclosure case, concedes that the trust-deed of Price was a paramount lien upon this land. As to this there was no controversy; and we have yet to find any case which upon principle or analogy holds that the language of the decree above quoted, and found in the statement of the case, would operate to postpone such paramount lien. In the first place the order barring the rights to redeem amounted to nothing as to the trust incumbrance; for the holder thereof is in no position to be required to redeem in order to keep good his lien. Then the order barring defendants " from setting up any claim thereto," could legitimately apply to Seth Twitchell, for his mortgage had been paid. It could not consistently nor rightfully apply to the Price incumbrance, for nothing had been alleged, either impliedly or expressly, against its validity. And as the petition, by force of its averment and prayer, would not have entitled the petitioner to a decree postponing the lien of the trust-deed if the holder thereof had appeared and answered, much less would it when there was no appearance and there was a decree *pro confesso*. In other words, Price, as defendant, by failing to appear and answer, admitted the distinct and positive allegations of the bill, and not those indefinite and uncertain. Nor did he, of course, concede petitioner's right to a decree, which by intendment or indirect words would be in plain violation of the admitted facts of the bill. And before a decree thus inconsistent with the bill and in violation of its whole theory (and this is the effect of this decree according to appellant's theory), can be regarded as postponing the lien of a senior incumbrance, and concluding the rights of the holder thereof, it should settle and adjudicate these rights, and :

recognize the priority of the junior incumbrance in language other and different, freer from doubt and uncertainty, than that employed in this instance.

Plaintiff occupies, in effect, the position of Price, if he was in court prior to the sale to Dow, seeking to foreclose his trust-deed. For it must be remembered, that the trustee sold, as he had a right to do by the terms of the deed, without the order of court, prior to any sale under Brown's foreclosure. The foreclosure order only undertook to cut off any claim of Price *after* the sale. And now suppose, before such sale, Price had sought the aid of the court, asking a judgment recognizing the priorty of his lien, would any one claim that the decree in favor of Brown had the effect of giving him any other or better lien than that given by his mortgage? This decree conferred no title, but simply recognized or confirmed his right to his lien. But this of course was subject to prior undisputed liens. And if Price had, by order of court making Brown a party, foreclosed prior to the sale, there could be but one opinion as to the priority of his right. He did foreclose in the manner pointed out and provided for in the contract of the parties. Brown being a junior incumbrancer, was bound to take notice of prior liens being properly recorded, and of the rights and powers of the parties thereunder. *Lowe* v. *Grinnan et al.*, 19 Iowa, 193, and cases there cited. Of course we are not to be understood as saying that a sale by the trustee would as necessarily conclude and cut off all antecedent rights as would a sale under a decree in court. But what we mean is, that, as the trust instrument authorized a sale by notice as therein specified, Brown took his lien subject to the terms of this power, and with a knowledge that the equity of redemption could be thus foreclosed. And it being thus foreclosed before any sale, the purchaser was alike bound by the terms and conditions of the power.

Under these circumstances, the case of *Cooley* v. *Brayton* (16 Iowa, 10), relied upon by appellant, is against rather than for him. And see generally the authorities cited in appellee's brief, and especially the New York and New Jersey cases.

Appellant's position that the ruling of the court on plaintiff's demurrer to his answer, should have been **2. PLEADING: trial after ruling upon demurrer.** appealed from, and that the final decree is in conflict with that ruling, we give but little weight. The demurrer admitted the fact as stated, so far, as well pleaded. The testimony on the final hearing did not show, as alleged in said answer, that the Price incumbrance " was fully paid and satisfied at the time of said foreclosure suit." Then, again, there was no final decree on overruling said demurrer. There was a simple order overruling the same, plaintiff excepted, and the cause was afterward heard upon the issues joined. The ruling upon the demurrer therefore did not conclude plaintiff from showing the true and exact rights of the respective parties.

That plaintiff might go into equity for the purpose of quieting his title, we entertain no doubt. Appellant was **3. TITLE: action to quiet.** setting up a claim to this land, which was in plaintiff's possession, and giving out and pretending that he had title to the same. It was entirely competent for plaintiff to ask of equity to quiet his title against appellant's claim, and to remove the cloud cast thereon by the foreclosure proceedings. To adjudicate and settle just such controversies is peculiarly within the province of a court of equity. Courts of equity not only grant remedial justice, but it is one of its boasts that it *prevents* injustice. 1 Story Eq. Jur., § 700, and note 2; *Key City Gas-light Company* v. *Munsell*, 19 Iowa, 304; *Dunham* v. *Isett*, 15 Id., 284; *Savery* v. *Browning*, 18 Id., 246.

Affirmed.